IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EVANSTON INSURANCE COMPANY,
LLC, an Illinois corporation

       Plaintiff,

v.

PRO-TECHS, INC., an Oregon
corporation,

       Defendant.

_____

PRO-TECHS, INC., an Oregon
corporation,

       Third-Party Plaintiff

v.

WILLIAM BESLEY ADAMS, JR.,
an individual, and W.B. ADAMS CO.,
an Oregon corporation,

       Third-Party Defendants.

_____

08-CV-592-BR

OPINION AND ORDER

1 - OPINION AND ORDER

WILLIAM BESLEY ADAMS, JR.,
an individual, and W.B. ADAMS CO.,
an Oregon corporation,

       Fourth-Party Plaintiffs;

v.

INDEMNITY EXCESS & SURPLUS
AGENCY, INC.,

       Fourth-Party Defendant.


THOMAS A. GORDON
ROBERT SPAJIC
Gordon & Polscer, LLC
9755 S.W. Barnes Road, Suite 650
Portland, OR 97225
(503) 242-2922

      Attorneys for Evanston Insurance Company

JOHN E. UFFELMAN
RODNEY ADAMS
Adams & Uffelman, LLP
4500 S.W. Hall Blvd.,
Beaverton, OR 97005
(503) 644-2146

      Attorneys for Pro-Techs, Inc.


BROWN, Judge.

    This matter comes before the Court on Plaintiff Evanston
Insurance Company, LLC's Motion (#27) for Summary Judgment.
For the following reasons, the Court **DENIES** Evanston's Motion.

2  - OPINION AND ORDER

## NATURE OF THE ACTION

This is an action on an insurance policy.  Evanston seeks a declaration that a professional liability insurance policy issued to Pro-Techs for the policy period July 31, 2007, to July 31, 2008, does not obligate Evanston either to defend or to indemnify Pro-Techs against any liability arising from an industrial accident that occurred during the policy period.

Pro-Techs asserts Counterclaims[1] against Evanston in which it seeks (1) damages arising from Evanston's negligence and/or breach of contract in failing to provide insurance coverage for which Pro-Techs applied; (2) a declaratory judgment that the policy is reformed to include the coverages for which Pro-Techs applied; and (3) if the policy is not reformed to provide those coverages, reimbursement of the approximately $50,000 Pro-Techs paid in premiums based on theories of unjust enrichment and misrepresentation.

This Court has subject-matter jurisdiction based on the diversity of citizenship of the parties.  28 U.S.C. 1332(a).

---

[1] Pro-Tech also filed a Third-Party Complaint against Third-Party Defendants William Besley Adams, Jr., and W.B. Adams (referred to collectively as Adams), which has been dismissed with prejudice.  *See* Order of Dismissal (filed Feb. 19, 2009, docket #26).  Adams, in turn, filed a Fourth-Party Complaint against Fourth-Party Defendant Indemnity Excess & Surplus Agency, Inc., which also has been dismissed without prejudice.  *See* Voluntary Dismissal Without Prejudice (filed Sep. 11, 2008, docket #16).

3 - OPINION AND ORDER

<u>**UNDISPUTED FACTS**</u>

The following facts are drawn from uncontroverted assertions in the parties' Concise Statements of Material Fact submitted in support of and in opposition to Evanston's Motion and other facts that counsel for both parties agreed upon during the November 2, 2009, oral argument on the pending Motion.

On May 27, 2007, Pro-Techs applied for "Specified Professions Professional Liability Insurance and Service and Technical Professional Liability Insurance" with Evanston through Pro-Tech's insurance agent, W.B. Adams Co.  In the insurance application, Pro-Techs described the professional services it provides as "Tank Truck Insp. & Testing" and "Pump & Equipt Installation & Repair."

W.B. Adams submitted the insurance application to Evanston through a surplus-lines insurance broker, Indemnity Excess and Surplus Agency, Inc. (IES).  On receipt of the insurance application from IES, Evanston issued a claims-made[2] "Service and Technical Professional Liability Insurance" policy to Pro-Techs.  The policy was issued for the period from July 31, 2007, to July 31, 2008, and covered the following potential

---

[2] A claims-made insurance policy provides insurance only for claims made during the policy period, regardless of the date of the occurrence giving rise to the loss that results in the claim.

4 - OPINION AND ORDER

liabilities:

> **Damages** and **Claim Expenses . . .** because of
> any:
>
> (a) act or omission in **Professional Services**
> rendered or that should have been
> rendered, or
>
> (b) **Personal Injury** committed,
>
> by the Insured . . . arising out of the
> conduct of the **Professional Services**
> specified in Item 6 of the Declarations.

Pl.'s Concise Statement of Facts, Ex. 3 (emphasis in original).

The policy also provided Evanston would "investigate, defend and

settle any **claim** to which coverage under this policy applies."

*Id.* (emphasis in original).

The "professional services" for which insurance coverage was

provided were limited to "Meter Calibration (excluding equipment

repair & installation) for others for a fee." *Id.* The policy

did not cover any liability arising from the business activities

listed in Pro-Tech's insurance application.

In October 2007 an explosion and fire at Atlas Foundry

resulted in the death of Charles McDonald, who was unloading

propane gas from a truck into storage tanks at Atlas. McDonald's

Estate brought a wrongful-death action against Atlas alleging the

explosion resulted from a negligently attached valve on the end

of the hose used to transfer the propane gas to the storage

tanks.  Atlas, in turn, asserted a Cross-Claim against Pro-Techs alleging Pro-Techs negligently installed, altered, and/or maintained the valve on the propane truck.

During the policy period, Pro-Techs made a claim under the policy in which it demanded that Evanston defend and indemnify Pro-Techs against any liability arising from McDonald's death. Evanston denied the claim on the ground that Pro-Tech's potential liability did not arise from meter calibration, which was the only professional services listed under the policy.

### STANDARDS

Federal Rule of Civil Procedure 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002).  In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial.  *Id*.

An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarmo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The court must draw all reasonable

inferences in favor of the nonmoving party. *Id*.  A mere disagreement about a material issue of fact, however, does not preclude summary judgment. *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990).  If the nonmoving party's claims are factually implausible, however, that party must come forward with more persuasive evidence than otherwise would be required. *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1147 (9th Cir. 1998)(citation omitted).

The substantive law governing a claim or a defense determines whether a fact is material. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).  If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001).


## DISCUSSION

Evanston moves for summary judgment on the ground that there is not a genuine issue of material fact as to whether it is obligated to defend or to indemnify Pro-Techs for any liability incurred by Pro-Techs arising from the explosion and fire at the Atlas Foundry in October 2007 or to reimburse the approximately $50,000 Pro-Techs paid as premiums on the policy issued by Evanston.

The parties agree the policy Evanston issued to Pro-Techs

7 - OPINION AND ORDER

does not require Evanston to defend or to indemnify Pro-Techs against the personal injury and wrongful-death claims asserted by the McDonald Estate in its Complaint against Atlas and asserted by Atlas in its Third-Party Complaint against Pro-Techs.  The parties disagree, however, as to whether Evanston can be held responsible for the allegedly negligent acts or omissions of Adams or IES under agency principles relevant to the practice of insurance in Oregon.

Pro-Techs asserts IES, which had a long-standing business relationship with Adams in insurance matters, is an appointed agent of Evanston in Oregon, and Pro-Techs procured the policy from Evanston at Adams's request.  Pro-Techs contends Adams's alleged negligence is attributable to Evanston based on an agency relationship between IES and Evanston, and the remedy for that negligence is to reform the insurance policy to provide the coverage that Pro-Techs sought in its insurance application in the first place.

Thus, the ultimate issue raised by Evanston in its Motion depends on the nature of IES's agency relationship with Evanston under Oregon law.

**I.    Oregon Law.**

The business of insurance is closely regulated in Oregon. Oregon Revised Statute § 744.078 provides as follows:

> (1)  An insurance producer shall not act as
> an agent of an insurer unless:

     (a)  The insurance producer is an
appointed agent of that insurer; or

     (b) The insurance producer transacts
insurance on behalf of another insurance
producer who is an appointed agent of that
insurer . . . .

             * * * *

     (4)  . . . any person who solicits or
procures an application for insurance as an
agent of the insurer shall in all matters
relating to the application for insurance and
the policy issued in consequence of the
application be regarded as the agent of the
insurer issuing the policy and not the agent
of the insured.

This statute "independently of common law tests of agency
. . . sets the policy of this state toward the position of
intermediaries in the sale of insurance." *Paulson v. West. Life
Ins. Co.*, 292 Or. 38, 60 (1981).[3]  The statute, however, "does
not determine the scope of an agent's authority." *J-P Int'l, LTD
v. Thompson*, 115 Or. App. 309, 312, *rev. denied*, 315 Or. 271
(1992).  An agent is not considered to be acting within the scope
of his authority as a matter of law "unless reasonable minds
would necessarily conclude that he was."  *Id*. at 312-13, (*citing
Jones v. Oberg*, 52 Or. App. 601, 608, *rev. denied*, 291 Or. 662
(1981)).

## II.  <u>IES/Evanston Relationship</u>.

---

   [3]At the time, the same statute was found under Or. Rev.
Stat. § 744.165.

9 - OPINION AND ORDER

The nature of IES's relationship with Evanston and its role in obtaining the insurance policy that Evanston issued to

Pro-Techs is described briefly in the deposition testimony of William Besley Adams, Jr., the sole stockholder of W.B. Adams, and in the Affidavit of James Heisler, President of IES.

A.  <u>Adams</u>.

Adams submitted Pro-Tech's insurance application to Evanston through IES.  Def.'s Mem., Ex. 2 at 7-8.  When obtaining insurance on behalf of Pro-Techs or other clients, Adams would use a "managing general agent" as an intermediary.  According to Adams, IES was a managing general agent for Evanston.  *Id.* at 3.

B.  <u>Heisler</u>.

Heisler is the President of IES, a wholesale insurance brokerage firm.  He is both a licensed Insurance Provider and a registered Surplus Lines Agent.  Pl.'s Mem., Ex. 8 at ¶¶ 1-2. IES provided the Evanston insurance policy involved in this case. *Id. at* ¶ 4.

**III.  <u>Analysis</u>.**

Heisler does not specifically describe IES as a managing general agent of Evanston, and neither party was able at oral argument to shed further light on the legal relationship between IES and Evanston.  On this record, "reasonable minds" could differ as to whether IES was, in fact, Evanston's managing

10 - OPINION AND ORDER

general agent in Oregon.  Accordingly, the Court concludes a

genuine issue of material fact exists as to whether IES is a

managing general agent of Evanston and thereby authorized to act

as Evanston's agent in providing insurance policies to insureds

in Oregon.[4]


**<u>CONCLUSION</u>**

For these reasons, the Court **DENIES** Evanston's Motion (#27)

for Summary Judgment.

IT IS SO ORDERED.

DATED this 24th day of November, 2009.


/s/ Anna J. Brown

_____

ANNA J. BROWN
United States District Judge


---

[4] The Court notes insurers in Oregon must keep "a list
of insurance producers contractually authorized to accept
applications on behalf of the insurer."  Or. Rev. Stat.
§ 744.078(2).

11 - OPINION AND ORDER

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EVANSTON INSURANCE COMPANY,
LLC, an Illinois corporation

      Plaintiff,

v.

PRO-TECHS, INC., an Oregon
corporation,

      Defendant.

_____

PRO-TECHS, INC., an Oregon
corporation,

      Third-Party Plaintiff

v.

WILLIAM BESLEY ADAMS, JR.,
an individual, and W.B. ADAMS CO.,
an Oregon corporation,

      Third-Party Defendants.

_____

08-CV-592-BR

OPINION AND ORDER

1 - OPINION AND ORDER

**WILLIAM BESLEY ADAMS, JR.,**
**an individual, and W.B. ADAMS CO.,**
**an Oregon corporation,**

        **Fourth-Party Plaintiffs;**

**v.**

**INDEMNITY EXCESS & SURPLUS**
**AGENCY, INC.,**

        **Fourth-Party Defendant.**


**THOMAS A. GORDON**
**ROBERT SPAJIC**
Gordon & Polscer, LLC
9755 S.W. Barnes Road, Suite 650
Portland, OR 97225
(503) 242-2922

        Attorneys for Evanston Insurance Company

**JOHN E. UFFELMAN**
**RODNEY ADAMS**
Adams & Uffelman, LLP
4500 S.W. Hall Blvd.,
Beaverton, OR 97005
(503) 644-2146

        Attorneys for Pro-Techs, Inc.


**BROWN, Judge.**

    This matter comes before the Court on Plaintiff Evanston Insurance Company, LLC's Motion (#27) for Summary Judgment. For the following reasons, the Court **DENIES** Evanston's Motion.

2 - OPINION AND ORDER

## NATURE OF THE ACTION

This is an action on an insurance policy.  Evanston seeks a declaration that a professional liability insurance policy issued to Pro-Techs for the policy period July 31, 2007, to July 31, 2008, does not obligate Evanston either to defend or to indemnify Pro-Techs against any liability arising from an industrial accident that occurred during the policy period.

Pro-Techs asserts Counterclaims[1] against Evanston in which it seeks (1) damages arising from Evanston's negligence and/or breach of contract in failing to provide insurance coverage for which Pro-Techs applied; (2) a declaratory judgment that the policy is reformed to include the coverages for which Pro-Techs applied; and (3) if the policy is not reformed to provide those coverages, reimbursement of the approximately $50,000 Pro-Techs paid in premiums based on theories of unjust enrichment and misrepresentation.

This Court has subject-matter jurisdiction based on the diversity of citizenship of the parties.  28 U.S.C. 1332(a).

---

[1] Pro-Tech also filed a Third-Party Complaint against Third-Party Defendants William Besley Adams, Jr., and W.B. Adams (referred to collectively as Adams), which has been dismissed with prejudice.  *See* Order of Dismissal (filed Feb. 19, 2009, docket #26).  Adams, in turn, filed a Fourth-Party Complaint against Fourth-Party Defendant Indemnity Excess & Surplus Agency, Inc., which also has been dismissed without prejudice.  *See* Voluntary Dismissal Without Prejudice (filed Sep. 11, 2008, docket #16).

**UNDISPUTED FACTS**

The following facts are drawn from uncontroverted assertions in the parties' Concise Statements of Material Fact submitted in support of and in opposition to Evanston's Motion and other facts that counsel for both parties agreed upon during the November 2, 2009, oral argument on the pending Motion.

On May 27, 2007, Pro-Techs applied for "Specified Professions Professional Liability Insurance and Service and Technical Professional Liability Insurance" with Evanston through Pro-Tech's insurance agent, W.B. Adams Co.  In the insurance application, Pro-Techs described the professional services it provides as "Tank Truck Insp. & Testing" and "Pump & Equipt Installation & Repair."

W.B. Adams submitted the insurance application to Evanston through a surplus-lines insurance broker, Indemnity Excess and Surplus Agency, Inc. (IES).  On receipt of the insurance application from IES, Evanston issued a claims-made[2] "Service and Technical Professional Liability Insurance" policy to Pro-Techs.  The policy was issued for the period from July 31, 2007, to July 31, 2008, and covered the following potential

---

[2]A claims-made insurance policy provides insurance only for claims made during the policy period, regardless of the date of the occurrence giving rise to the loss that results in the claim.

liabilities:

> **Damages** and **Claim Expenses . . .** because of
> any:
>
> (a) act or omission in **Professional Services**
> rendered or that should have been
> rendered, or
>
> (b) **Personal Injury** committed,
>
> by the Insured . . . arising out of the
> conduct of the **Professional Services**
> specified in Item 6 of the Declarations.

Pl.'s Concise Statement of Facts, Ex. 3 (emphasis in original).
The policy also provided Evanston would "investigate, defend and
settle any **claim** to which coverage under this policy applies."
*Id.* (emphasis in original).

The "professional services" for which insurance coverage was
provided were limited to "Meter Calibration (excluding equipment
repair & installation) for others for a fee." *Id.* The policy
did not cover any liability arising from the business activities
listed in Pro-Tech's insurance application.

In October 2007 an explosion and fire at Atlas Foundry
resulted in the death of Charles McDonald, who was unloading
propane gas from a truck into storage tanks at Atlas. McDonald's
Estate brought a wrongful-death action against Atlas alleging the
explosion resulted from a negligently attached valve on the end
of the hose used to transfer the propane gas to the storage

5 - OPINION AND ORDER

tanks.  Atlas, in turn, asserted a Cross-Claim against Pro-Techs alleging Pro-Techs negligently installed, altered, and/or maintained the valve on the propane truck.

During the policy period, Pro-Techs made a claim under the policy in which it demanded that Evanston defend and indemnify Pro-Techs against any liability arising from McDonald's death. Evanston denied the claim on the ground that Pro-Tech's potential liability did not arise from meter calibration, which was the only professional services listed under the policy.


## STANDARDS

Federal Rule of Civil Procedure 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002).  In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial.  *Id*.

An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarmo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The court must draw all reasonable

6 – OPINION AND ORDER

inferences in favor of the nonmoving party. *Id*.  A mere disagreement about a material issue of fact, however, does not preclude summary judgment. *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990).  If the nonmoving party's claims are factually implausible, however, that party must come forward with more persuasive evidence than otherwise would be required. *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1147 (9th Cir. 1998)(citation omitted).

The substantive law governing a claim or a defense determines whether a fact is material. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).  If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001).

## <u>DISCUSSION</u>

Evanston moves for summary judgment on the ground that there is not a genuine issue of material fact as to whether it is obligated to defend or to indemnify Pro-Techs for any liability incurred by Pro-Techs arising from the explosion and fire at the Atlas Foundry in October 2007 or to reimburse the approximately $50,000 Pro-Techs paid as premiums on the policy issued by Evanston.

The parties agree the policy Evanston issued to Pro-Techs

7 - OPINION AND ORDER

does not require Evanston to defend or to indemnify Pro-Techs against the personal injury and wrongful-death claims asserted by the McDonald Estate in its Complaint against Atlas and asserted by Atlas in its Third-Party Complaint against Pro-Techs.  The parties disagree, however, as to whether Evanston can be held responsible for the allegedly negligent acts or omissions of Adams or IES under agency principles relevant to the practice of insurance in Oregon.

Pro-Techs asserts IES, which had a long-standing business relationship with Adams in insurance matters, is an appointed agent of Evanston in Oregon, and Pro-Techs procured the policy from Evanston at Adams's request.  Pro-Techs contends Adams's alleged negligence is attributable to Evanston based on an agency relationship between IES and Evanston, and the remedy for that negligence is to reform the insurance policy to provide the coverage that Pro-Techs sought in its insurance application in the first place.

Thus, the ultimate issue raised by Evanston in its Motion depends on the nature of IES's agency relationship with Evanston under Oregon law.

I.   **Oregon Law.**

The business of insurance is closely regulated in Oregon. Oregon Revised Statute § 744.078 provides as follows:

> (1)  An insurance producer shall not act as
> an agent of an insurer unless:

(a)   The insurance producer is an
appointed agent of that insurer; or

(b) The insurance producer transacts
insurance on behalf of another insurance
producer who is an appointed agent of that
insurer . . . .

* * * *

(4)  . . . any person who solicits or
procures an application for insurance as an
agent of the insurer shall in all matters
relating to the application for insurance and
the policy issued in consequence of the
application be regarded as the agent of the
insurer issuing the policy and not the agent
of the insured.

This statute "independently of common law tests of agency
. . . sets the policy of this state toward the position of
intermediaries in the sale of insurance." *Paulson v. West. Life
Ins. Co.*, 292 Or. 38, 60 (1981).[3]  The statute, however, "does
not determine the scope of an agent's authority." *J-P Int'l, LTD
v. Thompson*, 115 Or. App. 309, 312, *rev. denied*, 315 Or. 271
(1992).  An agent is not considered to be acting within the scope
of his authority as a matter of law "unless reasonable minds
would necessarily conclude that he was."  *Id*. at 312-13, (*citing
Jones v. Oberg*, 52 Or. App. 601, 608, *rev. denied*, 291 Or. 662
(1981)).

## II.   IES/Evanston Relationship.

---

[3] At the time, the same statute was found under Or. Rev.
Stat. § 744.165.

9 – OPINION AND ORDER

The nature of IES's relationship with Evanston and its role in obtaining the insurance policy that Evanston issued to

Pro-Techs is described briefly in the deposition testimony of William Besley Adams, Jr., the sole stockholder of W.B. Adams, and in the Affidavit of James Heisler, President of IES.

A.  <u>Adams</u>.

Adams submitted Pro-Tech's insurance application to Evanston through IES.  Def.'s Mem., Ex. 2 at 7-8.  When obtaining insurance on behalf of Pro-Techs or other clients, Adams would use a "managing general agent" as an intermediary.  According to Adams, IES was a managing general agent for Evanston.  *Id.* at 3.

B.  <u>Heisler</u>.

Heisler is the President of IES, a wholesale insurance brokerage firm.  He is both a licensed Insurance Provider and a registered Surplus Lines Agent.  Pl.'s Mem., Ex. 8 at ¶¶ 1-2. IES provided the Evanston insurance policy involved in this case. *Id. at* ¶ 4.

**III.  <u>Analysis</u>.**

Heisler does not specifically describe IES as a managing general agent of Evanston, and neither party was able at oral argument to shed further light on the legal relationship between IES and Evanston.  On this record, "reasonable minds" could differ as to whether IES was, in fact, Evanston's managing

10 - OPINION AND ORDER

general agent in Oregon.  Accordingly, the Court concludes a

genuine issue of material fact exists as to whether IES is a

managing general agent of Evanston and thereby authorized to act

as Evanston's agent in providing insurance policies to insureds

in Oregon.[4]


## CONCLUSION

For these reasons, the Court **DENIES** Evanston's Motion (#27)

for Summary Judgment.

IT IS SO ORDERED.

DATED this 24th day of November, 2009.


/s/ Anna J. Brown

_____

ANNA J. BROWN
United States District Judge

_____

[4] The Court notes insurers in Oregon must keep "a list
of insurance producers contractually authorized to accept
applications on behalf of the insurer."  Or. Rev. Stat.
§ 744.078(2).

11 - OPINION AND ORDER